UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BROOKIE C. BIGLANDS, in her capacity as Executor of the Estate of Cynthia Ann Boldt, and BROOKIE C. BIGLANDS, in her personal capacity, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL NO. 1:10cv351 |
| RAYTHEON EMPLOYEE SAVINGS AND INVESTMENT PLAN[1] and RAYTHEON COMPANY, Plan Administrator, | ) ) ) ) ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for partial dismissal filed by the defendants, Raytheon Savings and Investment Plan ("Plan") and Raytheon Company ("Raytheon"), on May 19, 2011. The plaintiff, Brookie C. Biglands "(Biglands"), in her capacity as Executor of the Estate of Cynthia Ann Boldt and in her personal capacity, filed her response on June 2, 2011, to which the defendants replied on June 17, 2011.

For the following reasons, the motion will be granted.

Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is proper where the moving party demonstrates "beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle her to relief." Fed. R. Civ. P. 12(b)(6). Conley v. Gibson, 355 U.S. 41,

---

[1] Defendant "Raytheon Employee Savings and Investment Plan" has been incorrectly named, and is actually "Raytheon Savings and Investment Plan".

45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Id. at 1964-64 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level" and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949, 1965 (citing Twombly, 550 U.S. at 556).

## Discussion

The pertinent facts as pled in Biglands' Complaint or contained in documents referenced in the Complaint are that Cynthia Ann Boldt ("Boldt") was employed by Raytheon Company and participated in the Plan. (Complaint ¶ 8). Boldt died on January 3, 2003, at which time she was fully vested in her account balance in the Plan. (Complaint ¶ 9). Boldt executed her Last Will and Testament ("Will") on December 20, 2002 (14 days before her death) naming Biglands as executrix to her estate and heir to her residual estate. (Complaint ¶ 10). As executrix, Biglands is a potential Beneficiary of the Plan pursuant to Section 8.8(c)(5). (Complaint ¶ 12). Section 8.8(c) of the Plan, provides in relevant part:

> If a Participant dies without a designated Beneficiary surviving, the person or persons in the following class of successive beneficiaries surviving, any testamentary devise or bequest to the contrary notwithstanding, shall be deemed to be the Participant's Beneficiary: the Participant's (1) spouse, (2) children and issue of deceased children by right of representation, (3) parents, (4) brothers and sisters and issue of deceased brothers and sisters by right of representation, or (5) executors or administrators. If no Beneficiary can be located during a period of seven (7) years from the date of death, the Participant's Account shall be treated in the same manner as a forfeiture under section 6.4(a).

2

(Plan, Section 8.8(c)(5)).

In her Will, Boldt disinherited her biological daughter, Samantha Boldt. (Complaint ¶ 13). The Complaint does not reference or attach any beneficiary designation form executed by Boldt. Bigland contacted the Plan seeking distribution of the Plan assets to her shortly after Boldt's death. (Complaint ¶ 15). On June 28, 2004, the Plan denied Biglands' claim. Over two years later, on August 15, 2006, Biglands sent a letter to the Plan's third party administrator asking it to distribute the Plan assets to her. (Complaint ¶ 19). On May 30, 2007, the third-party administrator denied Biglands' request and informed Plaintiff that the benefits would remain in Cynthia Boldt's name until an heir was located. (Complaint ¶ 21).

On October 12, 2010, Biglands filed this suit asserting two claims against the defendants under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.§ 1001 et. seq. Count I of the Complaint contends that Biglands is a beneficiary of the Plan. (Complaint ¶ 28). She complains about the Plan's failure to pay the benefits to her and the failure to locate Samantha Boldt. (Complaint ¶¶ 29-30). Therefore, Count I seeks benefits under the Plan and "all other appropriate relief" pursuant to 29 U.S.C. § 1132(a)(1)(B) (§ 502(a)(1)(B)). (Complaint – Count I ¶¶ 28-30).

Similarly, in Count II, Biglands contends that she is a beneficiary of the Plan. (Complaint ¶ 32). She complains about the failure to pay the benefits to her and the failure to search for and locate Samantha Boldt. (Complaint ¶¶ 34-38). Therefore, Biglands' claim in Count II seeks benefits under the Plan via a constructive trust, injunctive relief, and "all other appropriate relief" pursuant to 29 U.S.C. § 1132(a)(3) (§ 502(a)(3))). (Complaint – Count II ¶¶ 33-38).

The defendants argue that Count II of Bigland's Complaint fails to state a viable claim

3

because it is nothing more than a re-packaged claim for benefits under Section 1132(a)(1)(B). Section 1132(a)(3) is considered a "catchall" provision, and permits an ERISA action "by a participant . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . . " 29 U.S.C. § 1132(a)(3). The Supreme Court has interpreted § 1132(a)(3) to apply in situations where no other remedy is available, but "where Congress elsewhere provided adequate relief for a[n] . . . injury, there will likely be no need for further equitable relief, in which case such relief would not be 'appropriate.'" Varity Corp. v. Howe, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

The defendants thus contend that where, as here, the plaintiff has a claim available to her under Section 1132(a)(1)(B), as she asserts in Count I, then she cannot also pursue a claim under Section 1132(a)(3). LaRue v. DeWolff, Boberg & Assocs., 554 U.S. 228, 256, 128 S.Ct. 1020, 1026, 169 L.Ed.2d 847 (2008) ("Relief is not 'appropriate' under § 502(a)(3) if another provision, such as § 502(a)(1)(B), offers an adequate remedy."). The Seventh Circuit has followed the majority of the circuits that have interpreted Varity to mean that "if relief is available to a plan participant under subsection (a)(1)(B), then that relief is unavailable under subsection (a)(3)." Mondry v. American Family Mut. Ins. Co.,557 F.3d 781, 805 (7th Cir. 2009) (citing Koretynska v. Metro Life Ins. Co., 474 F.3d 101, 106 (4th Cir. 2006) (joining the 5th, 6th, 8th, 9th and 11th Circuits in holding that "a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)")). Furthermore, district courts within the Seventh Circuit, including this court, generally agree that "'a claim for equitable relief under [Section 502(a)(3)] must be dismissed if relief may be obtained under

4

[Section 502(a)(1)(B)].'" See Burns v. Orthoteck Inc. Employees Pension Plan and Trust, 2009 WL 631245, *4 (N.D. Ind. 2009) (citing Varity for the position that a "plaintiff may not bring both a § 502(a)(3) claim for breach of fiduciary duty and a § 502(a)(1)(B) claim for wrongful denial of benefits" because "[s]uch claims are duplicative and, as a result, relief under a breach of duty theory is foreclosed."); Hakim v. Accenture U.S. Pension Plan, 656 F.Supp.2d 801, 810 (N.D.Ill. 2009) (quoting Rice v. Humana Ins. Co., 2007 WL 1655285, *4 (N.D.Ill. 2007); Powers v. Corn Prods. Int'l, Inc., 557 F.Supp.2d 928, 933 (N.D.Ill. 2008) (dismissing a § 502(a)(3) claim where the plaintiff also sought relief under § 502(a)(1)(B)); Herouz v. Humana Ins. Co., 2005 WL 1377854, *4 (N.D.Ill. 2005).

In Mertens v. Hewitt Associates, the Supreme Court narrowly construed Section 1132(a)(3), stating that "[e]quitable relief must mean something less than all relief." 508 U.S. 248, 259 n. 8, 113 S.Ct. 2063 (1993) (emphasis in original). The Supreme Court based this assertion on the distinction between classic legal relief and "those categories of relief that were typically available in equity (such as injunction, mandamus and restitution, but not compensatory damages)," and held that the plaintiff's claim for compensatory damages was precluded as a "classic" form of legal relief not authorized by Section 1132(a)(3). Id. at 255, 113 S.Ct. 2063.

In response, Biglands argues that equitable relief available in §1132(a)(3) can include monetary relief - typically a "legal" remedy. However, as the defendants have pointed out, this argument misses the point. The defendants' motion is based upon the well established principle that a plaintiff cannot bring claims under §§ 1132(a)(1)(B) and 1132(a)(3) arising from the same harm. See Varity, 516 U.S. at 511. Biglands' (a)(3) claim does not fail because it seeks monetary relief; rather, it fails because it seeks to remedy the same harm for which § 1132(a)(1)(B) already

5

provides adequate relief.

ERISA's civil enforcement provisions are "carefully integrated," providing "strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985). Section 1132(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims." Varity, 516 U.S. at 511. In contrast, § 1132(a)(3) is a "catchall" for other ERISA violations that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that Section 1132 does not elsewhere adequately remedy." Id. The true purpose of § 1132(a)(3) is to authorize individual equitable relief, not where plan administrators have made a mistake on an individual benefits determination, but where ERISA's other provisions do not afford adequate relief. Id. One of the main rationales justifying this sharp demarcation between (a)(1)(B) claims and (a)(3) claims is that the latter provision calls for "appropriate" equitable relief. This term has been construed to mean that Congress did not provide additional remedies for the same injury where an adequate one was already provided elsewhere in the statute. Varity, 516 U.S. at 515.

Nevertheless, Bigland claims that § 1132(a)(3) relief is "appropriate" under Varity, because review under § 1132(a)(1)(B) would not afford her "adequate" relief. Bigland argues that she needs an injunction forcing the defendants to act in line with ERISA and for a constructive trust, or a surcharge, forcing the distribution of the Plan assets to her, but Varity itself undermines this contention. In Varity, the Supreme Court identified the danger that a beneficiary might "repackage…her 'denial of benefits' claim as a claim for 'breach of fiduciary duty.'" 516 U.S. at 513. The Court found this risk "unlikely to materialize," however, in part

6

because "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." Id. at 514, 515. In Varity, the Supreme Court allowed plaintiffs' fiduciary claim to go forward because the plaintiffs, who were no longer"participants" of the plan, lacked any remedy under § 1132(a)(1)(B). Varity, 516 U.S. at 516.

This issue is not presented here because the monetary relief requested in Biglands' (a)(3) claim is the exact same monetary relief sought and available as part of her (a)(1)(B) claim. If relief is available under § 1132(a)(1)(B), as it is here, it is not also available as other appropriate equitable relief under § 1132(a)(3). See, e.g., Hakim v. Accenture U.S. Pension Plan, 2009 WL 2916842, at *4 (N.D. Ill. 2009) (dismissing claim under § 1132(a)(3) because the relief requested was available under § 1132(a)(1)(B)). See also, Rice., 2007 WL 1655285, at *4 (dismissing claim under § 1132(a)(3) because the relief requested was available under §1132(a)(1)(B)); Brosted v. Unum Life Ins. Co. of Am., 349 F. Supp. 2d 1088, 1092 (N.D. Ill.2004) (same); Clark v. Hewitt Assocs., LLC, 294 F. Supp. 2d 946, 950 (N.D. Ill. 2003) (same).

In fact, several circuit courts and district courts have interpreted Varity to mean that a claim for equitable relief under § 1132(a)(3) must be dismissed if, like the case here, relief is adequate under § 1132(a)(1)(B), i.e., "the equitable claims…are 'nothing more than repackaged denial of benefits claims,' failing to address "two separate and distinct injuries.'" Zuckerman v. United of Omaha Life Ins. Co. 2010 WL 2927694, *5 (N.D. Ill. 2010) (citing Crummett v. Metropolitan Life Ins. Co., 2007 WL 2071704, at *2 (D.D.C. 2007) (citation omitted); Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 839-40 (6th Cir. 2007)(dismissal of (a)(3) claim is appropriate where it is merely "a repackaged claim for

7

individual benefits," but not where plaintiff's (a)(3) claim and (a)(1)(B) claim address "two separate and distinct injuries"); Jones v. American General Life and Acc. Ins. Co., 370 F.3d 1065, 1073 (11th Cir. 2004) ("the relevant concern in Varity, is considering whether the plaintiffs had stated a claim under Section 1132(a)(3), was whether the plaintiffs also had a cause of action, based on the same allegations, under Section 1132(a)(1)(B) or ERISA's other more specific remedial provisions."); Wald v. Southwestern Bell Corp. Customcare Medical Plan, 83 F.3d 1002, 1006 (8th Cir. 1996) (finding that plaintiff did "not have a cause of action under section 1132(a)(3)" where she sought "no different relief under § 1132(a)(3) than she did under § 1132(a)(1)(B)); Rice, 2007 WL 1655285, at *4 (granting motion to dismiss § 1132(a)(3) claim where plaintiff sought identical relief under § 1132(a)(1)(B)); Moffat v. Unicare Midwest Plan Group 314541, 2005 WL 1766372, at *5 (N.D. Ill. 2005) (dismissing plaintiff's § 1132(a)(3) claim where the same allegations supported plaintiff's § 1132(a)(1)(B) claim); Jurgovan v. ITI Enterprises, 2004 WL 1427115, at *4 (N.D. Ill. 2004) (plaintiff's "§ 1132(a)(3) claim…must be dismissed because it seeks relief which duplicates the relief sought in her claim for benefits under §1132(a)(1)(B)"); Erikson v. Ungaretti & Harris-Exclusive Provider Plan, 2003 WL 22836462, at *3 (N.D. Ill. 2003) ("Unless [plaintiff] can state that she is entitled to some type of relief that would be unavailable to her under § 1132(a)(1)(B), she may not bring a claim under § 1132(a) [](3).").

As the court pointed out in Burns, in the unusual case where a breach of fiduciary duty claim may proceed with a claim for benefits, there must be some injury that is separate and distinct from the denial of benefits. 2009 WL 631245, at *4. For example a plaintiff can seek relief under both statutes when the plaintiff alleges that a plan's fiduciaries: (1) improperly

encouraged participants to invest in company stock that they knew was inflated and overpriced ; (2) failed to disclose material facts affecting the interests of beneficiaries; (3) failed to exercise due care in hiring, retaining, or training non-fiduciary agents; or (4) unilaterally awarded salary raises to the fiduciary himself or his family members. Burns, 2009 WL 631245 at *4 (citing Rogers v. Baxter Intern., Inc., 521 F.3d 702, 704-05 (7th Cir. 2008); Anweiler v. Am. Elec. Power Serv. Corp., 3 F.3d 986, 991 (7th Cir. 1993); Schmidt v. Sheet Metal Workers' Nat'l Pension Fund, 128 F.3d 541, 548 (7th Cir. 1997); LaScala v. Srufari, 479 F.3d 213, 221 (2nd Cir. 2007)). Unlike Biglands' alleged harm, the harm in these cases was separate, distinct and severable from the alleged harm arising from the benefit denial.

Bigland cites several cases in support of her position that she should be allowed to pursue claims under § 1132(a)(3) along with her § 1132(a)(1)(B) claim, including the recent U.S. Supreme Court decision, CIGNA Corp. v. Amara, 131 S.Ct. 1866 (2011). However, none of the cases fully support Biglands' position.

Bigland argues that Amara changed the landscape of (a)(3) claims by expanding the reach of the breach of fiduciary duty claim, but Biglands is incorrect. In fact, the equitable remedies discussed in the Amara are dicta, as Justice Scalia's concurring opinion makes clear. More importantly, even if the discussion in Amara was not dicta, as in Varity the plaintiffs in Amara were allowed to proceed with their claim under § 1132(a)(3) because they had no claim for relief under § 1132(a)(1)(B). While Bigland attempts to fit her case under Amara, even going so far as to call the type of monetary relief she requests a "surcharge," Amara is clearly factually distinguishable. Inthe present case, Biglands can seek relief under § 1132(a)(1)(B), barring her claim for identical relief under § 1132(a)(3).

9

Biglands further relies on Mondry, which is also distinguishable. In Mondry, 557 F.3d at 805, the Seventh Circuit found that a § 1132(a)(1)(B) claim and a § 1132(a)(3) claim could be pursued concurrently, but delineated another narrow instance when this can happen. In Mondry, the court held that the plaintiff's request for reimbursement for speech therapy was "legal" relief available to the plaintiff under § 1132(a)(1)(B). Id. To the contrary, the plaintiff's claim for the "lost time value of the money" the plaintiff had to advance, out of pocket, and expend on speech therapy was not "legal" relief available under § 1132(a)(1)(B) and was the type of "restitution" that may be available under § 1132(a)(3). Mondry, 557 F.3d at 806. Unlike the situation in Mondry, Biglands has not been forced to expend any money as a result of the defendants' claim denial. Additionally, she has an adequate remedy under § 1132(a)(1)(B) since the court may award pre-judgment interest if it determines that the claim denial was arbitrary and capricious. See, e. g., Hackner v. Long Term Disability Plan for Employees of The Havi Group LP, 81 Fed. Appx. 589, 595 (7th Cir. 2003); Denault v. Am United Life Ins. Co., 2003 WL 23220765, at*13 (S.D. Ind. 2003).

The key distinction between Biglands' breach of fiduciary claim and those mentioned above that were allowed to proceed with § 1132(a)(1)(B) claims is that, in those cases, there was an injury separate and distinct from the claim for benefits. In the present case, Biglands has not identified any relief she seeks that differs in any respect from her claim for benefits. Although Bigland attempts to argue that equitable tools like an injunction and constructive trust are necessary to afford her the desired monetary relief she seeks, it is clear that these are just means to an end and the requested relief is the same. Biglands' § 1132(a)(3) request that this court enjoin the defendants and force them to comply with ERISA is nothing more than a request that

this court reverse the Plan's denial of Biglands' request for benefits so she can obtain the Plan Assets. See, e.g., Great-West Life & Ann. Ins. Co. v. Knudson, 534 U.S. 204, 211 (2002) (an injunction to compel the payment of money past due under a contract does not constitute equitable relief under § 1132(a)(3)). Similarly, Biglands' request that this Court impose a constructive trust to distribute the Plan Assets to her is also a rephrased claim for benefits. 29 U.S.C. § 1132(a)(1)(B) (allowing a participant to pursue a claim "to recover benefits due to him under the terms of his plan.").

Plaintiff cannot seek a "legal" remedy and call it an "equitable" one just by labeling it a "surcharge," "constructive trust," and/or "injunction." The effect of any of these remedies would merely be to compel the defendant to pay benefits due under the terms of the ERISA Plan, all of which is available to Plaintiff under § 1132(a)(1)(B). Biglands' entitlement to those benefits is determined based on application of an arbitrary and capricious review standard. See, e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). Clearly, Biglands cannot avoid the arbitrary and capricious standard by pleading around it. See Varity, 516 U.S. at 513 ("characterizing a denial of benefits as a breach of fiduciary duty does not necessarily change the standard a court would apply when reviewing the administrator's decision to deny benefits"). Therefore, Count II will be dismissed.

The defendants also argue that Count II of the Complaint must be dismissed because it is untimely and barred by the applicable statute of limitations. ERISA provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of . . . (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the

> plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Here, the three-year statute of limitations applies. To conclude that a plaintiff has actual knowledge of an ERISA violation, it is not necessary for a plaintiff to "have knowledge of every last detail of a transaction, or knowledge of its illegality." Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992) (quoting Radiology Center, S.C. v. Stifel, Nicolaus & Co., 919 F.2d 1216, 1222 (7th Cir. 1990)). Rather, the "relevant knowledge for triggering the statute of limitations is knowledge of the facts or transaction that constituted the alleged violation." Id. (emphasis added). In short, to "have actual knowledge of a violation to trigger ERISA's three-year statute of limitations, a plaintiff must know of the essential facts of the transaction or conduct constituting the violation." Id.

Even under the standard of review and limited scope of information that may be considered under Rule 12(b)(6), it is clear that Biglands' claim was denied, in writing, on June 28, 2004, and she was advised that the Plan benefits would not be paid to her. Thus, the defendants argue that Bigland was required to file her suit no later than June 28, 2007, because the alleged breach or violation would have occurred no later than June 28, 2004. However, if Bigland attempts to claim some uncertainty in an effort to avoid dismissal of her claim, her Complaint indicates that she was advised again on May 30, 2007 that the Plan benefits would be paid to Boldt's daughter and not to her. Even using the later date of May 30, 2007, Biglands was required to file her suit no later than May 30, 2010, because the alleged breach or violation would have occurred at least three years earlier. (Complaint ¶¶ 20-22). Despite Biglands' knowledge of the alleged breach or violation, she did not file this suit until October 12, 2010 -

12

well past three years after the earliest date on which she had actual knowledge of the alleged breach, as required by ERISA. 29 U.S.C. § 1113.

Biglands, in response, argues that the Plan Administrator issued a conditional decision by stating that "[t]he Raytheon Savings & Investment Plan balance will remain in Cynthia Boldt's name until such time that the living heir may be located." Biglands is apparently relying on some sort of "continuing violations" theory. The defendants contend that Biglands' reliance on such a theory is misplaced because "[t]here is no 'continuing violation' theory to claims subject to ERISA's limitation period." Abbott v. Lockheed Martin Corp., 2009 WL 839099, at *6 (S.D. Ill. 2009) (citing Kanawi v. Bechtel Corp., 590 F.Supp.2d 1213, 1225 (N.D.Cal.2008) (citing Phillips v. Alaska Hotel & Rest. Employees Pension Fund, 944 F.2d 509, 520 (9th Cir. 1991) (rejecting application of a continuing violation exception to the statute of limitations established by 29 U.S.C. § 1113); see also Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1332 (9th Cir. 1996)(extending Phillips to an ERISA case not governed by § 413 and holding that the knowledge requirement of § 1113(2) would be a nullity if an ongoing violation was recognized despite the fact that plaintiff knew or had reason to know "of the injury which was the basis of the action."); Angell v. John Hancock Life Ins. Co., 421 F.Supp.2d 1168 (E.D. Mo. 2006) (refusing to allow the continuing violation doctrine to extend the ERISA statute of limitations.)

In Phillips, the Ninth Circuit noted that the application of the continuing violation theory failed based on the plain language of § 1113(a)(2) that requires the plaintiff's knowledge to be measured from the "earliest date" on which he or she knew of the breach and held that "[w]hile the trustees' conduct may be viewed as a series of breaches all were of the same character…. Once a plaintiff knew of one breach, an awareness of later breaches would impart nothing

materially new." Id. 944 F.2d at 520. "Thus, the earliest date on which a plaintiff became aware of any breach would thus start the limitation period of § 1113(a)(2) running." Id. The Phillips court concluded that, "if the breaches are of the same kind and nature and the plaintiff had knowledge of one of them more than three years before commencing suit, § 1132(2) bars the action." Id. at 521.

Even assuming Biglands' continuing violations theory is based on her claim that she continued to feel the effects of the Plan's decision, the Seventh Circuit has refused to use the continuing violations doctrine in this instance. Berger v. AXA Network LLC, 459 F.3d 804, 816 (7th Cir. 2006) (refusing to apply the continuing violations doctrine where ERISA plaintiffs simply "felt the continuing effects" of the alleged unlawful decision).

Biglands cannot argue that there was a "continuing pattern" of conduct or a continuing violation to extend the statute of limitations because the continuing acts were based on the same series of alleged breaches and were all of the same character, i.e., the defendant's refusal to decide that she was entitled to the Plan benefits. It is undisputed that Biglands received written notice and had actual knowledge of the Plan's action in June 2004. Moreover, Bigland offers no evidence that after the June 2004 denial, the defendants took any actions towards her that differed from those in 2004. In fact, the allegations in the Complaint state that after 2004, the Plan responded to Biglands' subsequent claims by denying them in the same manner as it did in 2004.

As noted, Biglands alleges that "every communication" in the Plan's "denials" were "conditional: if the Plan can locate Samantha, then Ms. Biglands is not the beneficiary," (Opp. Br. p. 8). As the defendants note, Biglands' contention is simply not correct. The Plan denied

14

Biglands' claim on June 28, 2004 and never used any "if" or "then" conditional qualifying language. To the contrary, the letter informed Plaintiff of the finality of that decision and of her right to appeal. "The 2004 Denial" (Cmplt. ¶¶ 16-17) contained no such conditional language:

> [Y]ou may have the distribution reviewed by the Raytheon Benefits Appeals Committee. Enclosed is a copy of Section 8.8 (Designation of Beneficiary) of the Plan document for your review. Finally, Section 13.6 of the Raytheon Savings and Investment Plan outlines the Plan's claims review procedure. For your convenience, enclosed is a claim review form in case you wish to request such a review. According to the procedure, a claimant must file within sixty days following receipt of denial of claim. The claimant may request a review by the Raytheon Benefits Appeals Committee by mailing a request for review to the Raytheon Company, 47 Foundry Ave, Waltham, MA 02453.

(Cmplt. Ex. 2).

Rather than pursue a lawsuit, Biglands made another request to the Plan's record keeper to distribute the Plan benefits to her almost three years after her initial claim on August 15, 2006. (Cmplt. Ex. 3). On May 30, 2007, Biglands claim was denied again. The May 30, 2007 letter stated:

> It has been determined that since the participant's daughter is living, she is the person that the plan hierarchy indicates should be the beneficiary of the account, the participant's will and other information to the contrary notwithstanding.
>
> [Y]ou may have the distribution reviewed by the Raytheon Benefits Appeals Committee. Enclosed is a copy of Section 8.8 (Designation of Beneficiary) of the Plan document for your review. Finally, Section 13.6 of the Raytheon Savings and Investment Plan outlines the Plan's claims review procedure. For your convenience, enclosed is a claim review form in case you wish to request such a review. According to the procedure, a claimant must file within sixty days following receipt of denial of claim. The claimant may request a review by the Raytheon Benefits Appeals Committee. . .

(Cmplt. ¶ 21; Cmplt. Ex. 4). Notably, no conditional language was used in the May 2007 letter and the Plan once again notified Plaintiff that Samantha Boldt was the proper beneficiary.

Given the Plan's determination that Samantha Bolt was the correct beneficiary, the denial of Biglands' claim for benefits and notice to Bigland of her final appeal rights, it is not logical for Bigland to argue that she had no knowledge of any breach of fiduciary duty by June 28, 2004 or, at the latest, May 30, 2007.

According to the allegations in Biglands' complaint: (1) she made a claim for benefits; (2) received a written denial; (3) waited until more than three years after the death of Cynthia Boldt before contacting the Plan record keeper; received another notice in May 2007 that the benefits would not be paid to her; and waited until October 12, 2010 before filing her Complaint.(Cmplt. ¶¶ 15-17, 19-21). Biglands' own recitation of events make it clear that she had actual knowledge of any alleged breach by June 2004 or, at latest, May 2007, making her breach of fiduciary duty claim untimely. Additionally, Biglands cannot claim she lacked sufficient knowledge of any alleged breach because she identifies the specific dates the Plan allegedly breached its fiduciary duties to her, if any, and, using Biglands' own dates, her (a)(3) claim is still barred.

Bigland alleges that the Plan had a fiduciary duty to "diligently search for Samantha Boldt after Ms. Biglands made her requested [sic] for distribution of the Plan Assets" in 2004 and "to declare Samantha Boldt deceased 'within a reasonable time period on or after the three year anniversary of Cynthia Ann Boldt's death,'" which was January 3, 2006. (Opp. Br. p. 12)

Biglands has posed the question "how long is a reasonable amount of time for the Plan Administrator to meet its fiduciary duty and has answered the question by stating that: "If, after due diligence, a Beneficiary cannot be located within three years, then the Plan Administrator can exercise its discretion to declare the missing Beneficiary deceased for Plan purposes…."

(Opp. Br. p. 9). Using Biglands' own time table, it is undisputed that Biglands had knowledge of any alleged breach of fiduciary duty by January 3, 2006, three years after Cynthia Ann Boldt's death, or within a reasonable period of time after Biglands' 2004 request for distribution of assets. Biglands even alleges and argues that she should have received the Plan benefits in 2006 and that the failure to receive same led to her August 15, 2006 letter. (Id.; Complt. ¶19) At that time, or certainly within three years of that time (August 15, 2009), Biglands was required to file any lawsuit under § 1132(a)(3).

Clearly, based on Biglands' own timeframe and admissions, her claim in Count II was filed well outside the three-year statute of limitations and is barred. Accordingly, for this additional reason, Count II will be dismissed.

The defendants have asserted that Raytheon Company is not a proper party to this suit. Biglands has not argued that Raytheon Company is a party to any claim besides Count II. As Count II will be dismissed, Raytheon Company will also be dismissed as a defendant.

## Conclusion

Based on the foregoing, the defendants' motion for partial dismissal [DE 17] is hereby GRANTED and Count II is hereby DISMISSED. Further, defendant Raytheon Company is hereby DISMISSED AS A DEFENDANT.

Entered: July 12, 2011.

        s/ William C. Lee
        William C. Lee, Judge
        United States District Court